IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 19, 2012

## CALVIN D. NORRIS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2006-B-1018     Monte D. Watkins, Judge**

**No. M2010-00404-CCA-R3-PC - Filed September 28, 2012**

The Petitioner, Calvin D. Norris, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his 2007 conviction for possession with intent to sell one-half gram or less of cocaine and his ten-year sentence. On appeal, the Petitioner contends that his guilty plea was unknowing, involuntary, and unintelligent because he was denied the effective assistance of counsel. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Ashley Preston, Nashville, Tennessee, for the appellant, Calvin D. Norris.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Victor S. (Torry) Johnson, III, District Attorney General; and Deborah M. Housel, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

According to the prosecutor's recitation of the facts at the guilty plea hearing, Davidson County police officers worked with a confidential informant who was "wired" and taken to 103 North Sixth Street to meet the Petitioner's co-defendant. The informant asked the co-defendant to purchase twenty dollars' worth of cocaine, and the co-defendant took the informant to meet the Petitioner. The informant bought twenty dollars' worth of crack cocaine from the Petitioner. A police detective observed the transaction. After the informant left, the police arrested and searched the Petitioner, and they found a small amount of crack

cocaine. Both the substance found on the Petitioner and the substance sold to the informant tested positive for a cocaine base.

At the post-conviction hearing, the Petitioner testified that he met with counsel on the underlying charge while he was incarcerated on another charge. He said he consulted with counsel one to four times while he was in custody. He said he did not speak with counsel after his release until she called to remind him of the date of his plea hearing. He said his only discussion with counsel about entering a guilty plea was by telephone immediately before his hearing. He said counsel told him that the State offered him a Range III, ten-year sentence at forty-five percent to be served on community corrections.

The Petitioner testified that counsel gave him a copy of the State's discovery package and that he read it. He said counsel did not review the discovery with him other than to tell him there would be a jury trial if he rejected the offer. He said he did not understand his chances of being convicted by a jury, did not understand the length of the sentence if found guilty by a jury, and did not discuss defense strategy with counsel. He said that he remembered signing the plea agreement but that counsel did not review it with him other than to explain that the State offered the Petitioner ten years at forty-five percent to be served on community corrections. He said he did not realize that he pleaded guilty in the plea agreement as a Range III offender.

The Petitioner testified that he signed the plea agreement because he wanted to remain out of jail. He said he did not ask counsel questions when signing the plea agreement because he wanted the case to be over. He said the only pressure he felt to sign the plea agreement was the pressure of going to a trial if he did not sign. He stated that counsel did not discuss the consequences of the plea agreement with him but that he understood he would serve forty-five percent of ten years before being eligible for release if he violated his community corrections sentence.

The Petitioner testified that during his guilty plea hearing, he confirmed to the trial court that he understood his rights and that he knew he waived his rights by signing the plea agreement. He said that he told the court he was satisfied with counsel's services but that he was not satisfied. He said he did not know at the time he signed the plea agreement that if he were convicted at trial, he would be sentenced to serve between six and ten years at thirty-five percent, less time than he accepted in the plea agreement.

The Petitioner testified that after entering his guilty plea, he violated the conditions of his community corrections release. He said that counsel told him it would be in his best interest to put his sentence into effect. He said that one of his alleged violations was he

failed to report but that he had "walking pneumonia" and could not report as required. He said counsel did not investigate this defense.

On cross-examination, the Petitioner testified that counsel also represented him at his preliminary hearing. He admitted that he had an extensive criminal record and that at the time of his plea agreement, he had a charge pending for violating an order of protection. He said that the State offered him a six-year sentence at thirty-five percent to serve but that he rejected the offer because he did not want to go to jail. He agreed that counsel filed motions to reduce his bond, to request discovery, and to request a continuance. He said that he and counsel prepared for a trial on the charge but that he voluntarily decided to plead guilty. He said that counsel attempted to convince him to accept the six-year sentence at thirty-five percent to serve but that she negotiated a plea agreement that included community corrections because he wanted to stay out of jail.

The Petitioner testified that at his plea hearing, he was placed under oath and that he told the trial court he understood his rights, was not under the influence of drugs or alcohol, understood what he was doing, and was satisfied with his attorney's services. He agreed that he told the court at his hearing that he had reviewed the petition with his attorney and that he understood his sentence could be increased if he violated his community corrections.

The Petitioner testified that he violated his community corrections by incurring new charges for forgery, attempted theft of property, aggravated burglary, theft of property, and harassment and by failing to report. He said counsel explained the consequences of his violations. He said that he knew the trial court could increase his sentence and that he decided to put his full sentence into effect.

Counsel testified that she had practiced law since 1986. She said she practiced for eight and one-half years in Missouri and Illinois as a public defender and in private practice before moving to Tennessee fifteen years ago. She said she was in private practice after moving to Tennessee. She said her primary area of practice was criminal law.

Counsel testified that she was appointed to the Petitioner's case in February 2006 and that she initially met with the Petitioner for thirty minutes and discussed the Petitioner's charges. She said that during the initial meeting, she generally advised clients of the process and different routes that the case might take and listened to the client's story. She stated that during the initial meeting, the Petitioner completed a form that she used to collect contact information and sensitive background information and told her about a few of his past felony convictions. She said she questioned officers at the Petitioner's preliminary hearing and filed a motion to reduce his bond.

Counsel testified that the Petitioner was released on bond and that she spoke with him many times. She gave specific dates of telephone calls with the Petitioner in January, March, April, May, and June. She said the Drug Court advised her in October 2006 that it would not accept the Petitioner because of his record.

Counsel testified that she reviewed the State's discovery material and discussed it with the Petitioner. She said they were surprised to find the amount of cocaine listed in the report was two-tenths of one gram. She said she discussed an entrapment defense with the Petitioner. She stated that she left the decision as to how to proceed with the Petitioner but that she advised him to accept the six-year plea offer. She said that the Petitioner wanted to "remain on the street" and that she reluctantly conveyed his wishes to the State. She said she advised the Petitioner to accept the six-year offer because in her experience, it was difficult to complete strict probation such as community corrections successfully. She said the Petitioner accepted the ten-year offer in community corrections against her advice.

Counsel testified that she discussed the Petitioner's rights to a trial and to a jury with him on the day he pleaded guilty and that she was preparing for a trial if the Petitioner wanted a trial. She said that she considered suppression and identification issues but that based on her experience, these were not viable issues. She thought she might have been able to pursue a defense that the Petitioner was "enticed." She agreed that if the case had gone to trial, the Petitioner could have received a twelve-year sentence. She said she told the Petitioner that his sentence could have been consecutive to any sentence he received from his other pending charges.

Counsel testified that she was also appointed to represent the Petitioner for his community correction violations. She said she was aware that the Petitioner had pneumonia, high blood pressure, and asthma and planned to use the information at the revocation hearing. She stated that she had notes for each of the Petitioner's new charges and was prepared for a hearing but that the Petitioner decided to serve his sentence.

On cross-examination, counsel testified that she made seven court appearances on the Petitioner's behalf. She said that she met with the Petitioner on August 18, 2006, and on court dates and that she spoke with him by telephone. She said her telephone conversations with the Petitioner were one-tenth to three-tenths of an hour. She said that the Petitioner had the most time to consider the six-year offer and that the ten-year offer for community corrections was "last minute." She said that she met with the district attorney on June 15 and that she received the ten-year offer that day. She said that she told the Petitioner about the offer on June 16 and that she talked to him nine times between June 16 and June 28, the day he pleaded guilty.

Counsel testified that she understood the Petitioner to be a Range II offender who faced between six and ten years if convicted at a trial. She said she explained the range of punishment to the Petitioner when they reviewed the report showing that the amount of cocaine found was less than one-half gram. She said that she "misspoke" during her direct examination by saying that the Petitioner faced a twelve-year sentence if he went to trial. She said that she would have been more comfortable if the Petitioner would have accepted the six-year offer but that it was the Petitioner's decision. She stated that she completed the plea petition and that she reviewed the petition and the Petitioner's rights, including the right to a trial, with him before the plea hearing. She said that she explained to the Petitioner the sentences he faced from a trial as opposed to the plea agreement.

Counsel testified that the Petitioner's case was set for trial. She said she conducted the preliminary hearing and "had a pretty good idea what the evidence was." She said she read the police report but did not move to discover the identity of the confidential informant. She said she only discussed the entrapment defense with the Petitioner. She acknowledged that the "buy money" was not recovered from the Petitioner.

Counsel testified that she did not request medical records to confirm the Petitioner's pneumonia. She said that it was the Petitioner's decision to serve his sentence. On redirect examination, counsel said the investigation began because the police saw a "hand-to-hand sale" by the Petitioner.

In denying the petition for post-conviction relief, the trial court concluded that the Petitioner "knowingly and voluntarily entered his plea." The court stated,

> [T]he record and testimony presented reveal[] that the petitioner pled guilty after numerous conversations with his attorney regarding possible consequences of going to trial. . . . The defendant was able to review several possibilities of outcomes of the case with his attorney. It was during these discussions that the defendant was informed of the likelihood of conviction at trial and the possible sentences if found guilty.

The court found that the "Petitioner was informed and counseled on his options" and that he "failed to show that he was prejudice[d] by counsel's allegedly deficient conduct." This appeal followed.

-5-

# I

The Petitioner contends that the trial court erred by denying his petition for post-conviction relief in that his guilty plea was unknowing, involuntary, and unintelligent because he did not receive the effective assistance of counsel. He argues that trial counsel provided ineffective assistance of counsel by failing to (a) communicate with him regarding defenses, strategies, and expectations, (b) advise him of the range of punishment he faced, (c) review the plea petition with him, and (d) advise him of the consequences of entering a guilty plea. The Petitioner asserts that he would not have pleaded guilty had counsel been effective in his representation. The State contends that the Petitioner failed to prove his claims by clear and convincing evidence. We agree with the State.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2006).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability means a "probability sufficient

to undermine confidence in the outcome." Id. When a petitioner pleads guilty, he must show a reasonable probability that, but for the errors of his counsel, he would not have pled guilty. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Adkins v. State, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994).

The United States Supreme Court has held that a plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." Blankenship, 858 S.W.2d at 904. A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

With regard to counsel's failure to communicate with the Petitioner about defenses, strategies, and expectations, the record shows that at the plea hearing, the Petitioner acknowledged under oath that he had been able to communicate with his attorney and that he was satisfied with her representation. The trial court accredited counsel's testimony that she had multiple telephone conversations with the Petitioner and met with him during his court appearances and on another occasion. The court found that the Petitioner "pled guilty after numerous conversations with his attorney regarding possible consequence of going to trial" and that he was able to review "several possibilities of outcomes of the case with his attorney." The evidence does not preponderate against the trial court's factual findings. We conclude that counsel was not deficient.

Regarding the Petitioner's claim that counsel failed to advise the Petitioner of the range of punishment he faced if convicted at a trial, the Petitioner answered, "Yes, sir" at the plea hearing when the trial court asked if the charge and punishment for sale of a controlled substance had been explained to him. The court found that the Petitioner was informed during his discussions with his attorney of "the possible sentences if found guilty." The evidence does not preponderate against the trial court's factual findings. We conclude that counsel was not deficient.

Regarding the claim that counsel failed to review the plea petition with the Petitioner, when the trial court asked the Petitioner at the plea hearing if he had reviewed the plea petition with his attorney, the Petitioner responded, "Yes, sir." The Petitioner also said during the plea hearing that he understood the contents of the plea petition, that he did not have any questions for his attorney or the court concerning the petition, and that he signed the petition freely and voluntarily. We conclude that counsel was not deficient.

Regarding the claim that counsel failed to advise the Petitioner of the consequences of entering a guilty plea, the trial court advised the Petitioner at the plea hearing that his felony conviction could be used to increase his punishment for a future conviction and advised the Petitioner of the rights he waived by pleading guilty. The court found that the Petitioner was of "average intelligence and understood the charges and the nature of the charges." The evidence does not preponderate against the trial court's factual findings. We conclude that counsel was not deficient.

The record reflects that counsel discussed the case, the charges, and possible sentences with the Petitioner. We note the Petitioner testified at his plea hearing that he entered his plea freely and voluntarily and that he understood the charge, the range of punishment, and the rights he waived upon pleading guilty. The trial court concluded that the Petitioner voluntarily and knowingly entered his plea, and the evidence does not preponderate against the trial court's conclusion. The Petitioner is not entitled to relief on this issue.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE